**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KRISTINA ANDREASOVA, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

NOBLE 33 HOLDINGS, LLC,
MAIZON NEW YORK LLC,
d/b/a MEDUZA MEDITERRANIA,
TOCA MADERA SCOTTSDALE LLC,
d/b/a TOCA MADERA,
TOCA MADERA LAS VEGAS, LLC,
d/b/a TOCA MADERA,
TOCA MADERA HOUSTON LLC,
d/b/a TOCA MADERA,
CASA MADERA WEHO, LLC,
d/b/a CASA MADERA,
WYNWOOD HOSPITALITY HOLDINGS LLC,
d/b/a SPARROW ITALIA,
1587 PRIME KC, LLC,
d/b/a 1587 PRIME,
MICHAEL TANHA, and
TOSH BERMAN,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff KRISTINA ANDREASOVA ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective

Action Complaint against Corporate Defendants NOBLE 33 HOLDINGS, LLC ("Defendant NOBLE 33"), MAIZON NEW YORK LLC, d/b/a MEDUZA MEDITERRANIA ("Defendant MEDUZA MEDITTERANIA"), TOCA MADERA SCOTTSDALE LLC, d/b/a TOCA MADERA ("Defendant TOCA MADERA SCOTTSDALE"), TOCA MADERA LAS VEGAS, LLC, d/b/a TOCA MADERA ("Defendant TOCA MADERA LAS VEGAS"), TOCA MADERA HOUSTON LLC, d/b/a TOCA MADERA ("Defendant TOCA MADERA HOUSTON"), CASA MADERA WEHO, LLC, d/b/a CASA MADERA "Defendant CASA MADERA"), WYNWOOD HOSPITALITY HOLDINGS LLC, d/b/a SPARROW ITALIA ("Defendant SPARROW ITALIA"), 1587 PRIME KC, LLC, d/b/a 1587 PRIME ("Defendant 1587 PRIME"), and Individual Defendants MICHAEL TANHA ("Defendant TANHA") and TOSH BERMAN ("Defendant BERMAN") (Collectively, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, due to time-shaving, (2) unpaid wages, due to unlawful tip retention, (3) unpaid wages, due to invalid tip credit, (4) unreimbursed tools of the trade, (5) liquidated damages, and (6) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, due to time-shaving, (2) unpaid wages, due to unlawful tip retention, (3) unpaid wages, due to a failure to reimburse uniform expenses, including uniform maintenance expenses, (4) liquidated damages, (5) unpaid call-in pay premiums, (6) unreimbursed tools of the trade, (7) statutory penalties due to WTPA violations, and (8) attorneys' fees and costs.

3. Defendants operate restaurants throughout Arizona, California, Florida, Missouri, Nevada, New York, and Texas.

4. Plaintiff, potential collective members, and putative class members are current and former front-of-house and back-of-house employees, including but not limited to servers, cooks, food preparers, dishwashers, housemen, cleaning staff, hosts, waiters, bartenders, bussers, runners and other similarly positioned employees of Defendants and were victims of Defendants' schemes to underpay employees. Specifically, despite requiring employees to work hours beyond their shift each day, Defendants would only compensate employees based on their scheduled work hours, rather than actual hours worked. Defendants' wage policies resulted in post-shift time-shaving.

5. Plaintiff brings this wage and hour class action on behalf of herself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq*., and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

2) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

3) Florida: Florida Labor Law, Fla. Stat. 448.08 *et seq*.;

4) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq*.;

5) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;

6) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq;* and

7) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq*.

(Collectively, the "Relevant State Wage and Hour Laws," or "RSWHL")

6. Plaintiff, potential collective members, and putative class members were all victims of Defendants' failure to pay wages, including overtime wages. Defendants instituted a nationwide policy of not compensating wages for all hours worked, including (i) not tracking actual hours worked, and (ii) compensating employees based on a fixed schedule, regardless of whether employees worked longer than their scheduled shifts.

7. Plaintiff brings this wage and hour class action on behalf of herself, and all putative class members employed by Defendants nationwide, who during the applicable state and federal limitations period (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under the FLSA and the regulations of the above states.

8. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty (40) which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of an RSWHL, Plaintiff further alleges that she and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. § 1391(b)(2):

- **28 U.S.C. § 1391(b)(1)**: Venue is proper when a lawsuit is filed in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* Because Defendants operate as a single integrated enterprise, all Defendants are residents of New York within the meaning of 28 U.S.C. 1391(c)(2), which defines corporate residency as any judicial district in which a corporate entity is subject to personal jurisdiction. In operating Meduza Mediterrania in the State of New York, Defendants have purposefully availed themselves of the benefits and protections of the State of New York, thereby giving rise to the legal obligations at issue in this action—namely, their obligation to comply with the New York Labor Law. Moreover, this Court has personal jurisdiction over Defendants' enterprise pursuant to C.P.L.R. 302(1) because Defendants transact business within the State of New York.

- **28 U.S.C. § 1391(b)(2)**: Venue is proper when "a substantial part of the events or omissions giving rise to the claim occurred…" *Id.* Here, Plaintiff's claims concern the underpayment of wages earned during her employment at Meduza Mediterrania, a Manhattan-based restaurant, thereby satisfying the requirements of 28 U.S.C. § 1391(b)(2).

## PARTIES

11. Plaintiff, for all relevant time periods, was a resident of New York County, New York.

12. Defendants own and operate seven (7) restaurants through the parent company NOBLE 33, which oversees five (5) brands: Casa Madera, Toca Madera, Sparrow Italia, Meduza Mediterrania, and 1587 Prime. Defendants' restaurants are located at the following addresses:

| **No.** | **D/b/a** | **Address** |
|---|---|---|
| 1. | Meduza Mediterrania | 657 Hudson Street, New York, NY 10014 |
| 2. | Toca Madera Scottsdale | 4736 N Goldwater Blvd, Scottsdale, AZ 85251 |
| 3. | Toca Madera Las Vegas | 3720 S Las Vegas Blvd South, Unit 233, Las Vegas, NV 89153 |
| 4. | Toca Madera Houston | 1755 Allen Pkwy, Suite 101, Houston, TX 77019 |
| 5. | Casa Madera | 8440 Sunset Blvd, West Hollywood, CA 90069 |
| 6. | Sparrow Italia | 255 NW 25th Street, Miami, FL 33127 |
| 7. | 1587 Prime | 1500 Baltimore Avenue, Kansas City, MO 64108 |

(Collectively, the "Restaurants").

13. The Restaurants are operated as a single integrated enterprise under the common control of Defendant NOBLE 33. *See* **Exhibit A.** Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

(a) The Restaurants are all advertised on Defendant NOBLE 33's common website, which contains hyperlinks to Defendant NOBLE 33's five (5) brands and their respective websites. *See* **Exhibit A.** Additionally, on the websites of Defendant NOBLE 33's brands, each brand lists its corresponding restaurants. *See* **Exhibit B.**

(b) Defendants collectively market and advertise the Restaurants through Defendant NOBLE 33's LinkedIn, Instagram, and Facebook accounts. *See* **Exhibit C**. In addition, the Restaurants cross-promote one another on their individual social media accounts. For example, on October 4, 2023, Meduza Mediterrania promoted Toca Madera, Sparrow Italia, and Casa Madera in an Instagram post. *Id.*

(c) The Restaurants have a centralized Human Resources Department and Administration Department that deals with hiring, firing, and administering all the Restaurants' workforce. For example, Saba Breighner, Defendants' Head of Human Resources for all the Restaurants, represents that she "support[s] hospitality operations across multiple states." *See* **Exhibit D**. Moreover, Defendants' Human Resources Department is accessible through a single, centralized email address: humanresources@noble33.com. *Id.*

(d) Noble 33 operates one (1) career portal for all of Defendants' locations. The career portal lists virtually identical job descriptions for multiple different Restaurants. See **Exhibit E**, snapshot of Noble 33's "Careers" page, available at: https://www.noble33.com/careers.

(e) Defendants' "Careers" website additionally lists a job opening for Construction Project Manager on their website. One of the required duties is to be "[w]illing[] to travel to various Noble 33 locations as needed." *See* **Exhibit F**. Moreover, Defendants previously listed a job opening for the East Coast Director of Operations, a role tasked with "driving operational excellence, financial performance, and brand execution across all Noble 33 East Coast locations." *Id.*

(f) Defendant NOBLE 33's website includes a section entitled "Press," which advertises articles concerning the Restaurants, regardless of location or brand. *See* **Exhibit G**.

(g) The Restaurants' interrelation of operations is further reflected by an article published by Restaurant Business entitled "Noble 33 Execs Facing Ugly Legal Battle After Firing General Counsel for Embezzlement." **Exhibit H**. The article discusses how Defendants, through the parent company Noble 33, operate all Toca

Madera locations, Casa Madera, Sparrow Italia, Meduza Mediterrania, and 1587 Prime. *Id.*

(h) In its complaint against Defendants' former General Counsel, Defendant NOBLE 33 represents that "[i]t leads the management and expansion of a number of acclaimed fine-dining and other hospitality concepts, including Toca Madera and Casa Madera Restaurants." *See* **Exhibit I**. The Complaint identifies several additional indicia that the Restaurants operate as a single integrated enterprise, including: (1) Matthew Syken served as Defendants' "only in-house lawyer" and was "entrusted with managing all of … Noble 33's legal affairs"; (2) Defendants utilize shared vendors across the Restaurants, including InKind; and (3) Defendants executed buyout agreements for the 2023 and 2024 Super Bowls covering two Toca Madera locations in different states. *Id.*

(i) Individual Defendant MICHAEL TANHA is listed as Co-Founder and CEO on Corporate Defendant NOBLE 33's website, news articles, and his own personal website. *See* **Exhibit J**.

(j) Individual Defendant TOSH BERMAN is listed as Co-Founder and Chairman on Corporate Defendant NOBLE 33's website, news articles, and his own personal website. *See* **Exhibit K**.

(k) Defendants advertise gift cards on their website that are redeemable at any of the Restaurants. *See* **Exhibit L**.

14. Although Plaintiff did not work at all of Defendants' Restaurants, **<u>all</u>** of the Restaurants are appropriately named in this Complaint through the relevant Defendants. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and the relevant Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiff seeks to represent.

15. Corporate Defendant NOBLE 33 HOLDINGS, LLC is a domestic limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 7160 Dallas Pkwy, Suite 340, Plano, TX 75024. Corporate Defendant NOBLE 33 HOLDINGS, LLC operates as the parent company of the Restaurants, managing their overall operations, branding, and strategic direction.

16. Corporate Defendant MAIZON NEW YORK LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business located at 657 Hudson Street, New York, NY 10014. Corporate Defendant MAIZON NEW YORK LLC, together with Corporate Defendant NOBLE 33, operates Meduza Mediterrania, a Mediterranean restaurant located in New York City's Meatpacking District known for its raw bar, curated cocktail program, and private event offerings.

17. Corporate Defendant TOCA MADERA SCOTTSDALE LLC is a domestic limited liability company organized under the laws of the State of Arizona, with its principal place of business located at 4736 N Goldwater Blvd, Scottsdale, AZ 85251. Corporate Defendant TOCA MADERA SCOTTSDALE LLC, together with Corporate Defendant NOBLE 33, operates the Scottsdale branch of Toca Madera, a modern Mexican restaurant known for its upscale, high-energy atmosphere, elevated cuisine, and craft cocktail program.

18. Corporate Defendant TOCA MADERA LAS VEGAS LLC is a domestic limited liability company organized under the laws of the State of Nevada, with its principal place of business located at 3720 S Las Vegas Blvd South Unit 233, Las Vegas, NV 89158. Corporate Defendant TOCA MADERA LAS VEGAS LLC, together with Corporate Defendant NOBLE 33, operates the Las Vegas branch of Toca Madera, a modern Mexican restaurant known for its upscale, high-energy atmosphere, elevated cuisine, and craft cocktail program.

19. Corporate Defendant TOCA MADERA HOUSTON LLC is a domestic limited liability company organized under the laws of the State of Texas, with its principal place of business located at 1755 Allen Pkwy, Suite 101, Houston, TX 77019. Corporate Defendant TOCA MADERA HOUSTON LLC, together with Corporate Defendant NOBLE 33, operates the

Houston branch of Toca Madera, a modern Mexican restaurant known for its upscale, high-energy atmosphere, elevated cuisine, and craft cocktail program.

20. Corporate Defendant CASA MADERA WEHO, LLC is a domestic limited liability company organized under the laws of the State of California, with its principal place of business located at 8440 Sunset Blvd., West Hollywood, CA 90069. Corporate Defendant CASA MADERA WEHO, LLC, together with Corporate Defendant NOBLE 33, operates Casa Madera, a coastal-inspired dining concept known for its Tulum-influenced aesthetic, emphasis on seafood and shareable dishes, and upscale dining environment.

21. Corporate Defendant WYNWOOD HOSPITALITY HOLDINGS LLC is a domestic limited liability company organized under the laws of the State of Florida, with its principal place of business located at 255 NW 25th Street, Miami, FL 33127. Corporate Defendant WYNWOOD HOSPITALITY HOLDINGS LLC, together with Corporate Defendant NOBLE 33, operates Sparrow Italia, an Italian restaurant known for its handmade pastas, wood-fired meats, a polished, and European-style dining room.

22. Corporate Defendant 1587 PRIME KC, LLC is a domestic limited liability company organized under the laws of the State of Missouri, with its principal place of business located at 1500 Baltimore Avenue, Kansas City, MO 64108. Corporate Defendant 1587 PRIME KC, LLC, together with Corporate Defendant NOBLE 33, operates 1587 Prime, a modern steakhouse known for its emphasis on premium dry-aged steaks, tableside presentation, and a club-like atmosphere.

23. Individual Defendant MICHAEL TANHA is the Co-Founder and Chief Executive Officer of Defendant NOBLE 33. Defendant TANHA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times,

Defendant TANHA—by himself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Defendant TANHA would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Defendant TANHA exercised functional control over Corporate Defendants' businesses and its financial operations.

24. Individual Defendant TOSH BERMAN is the Co-Founder and Chairman of Defendant NOBLE 33. Defendant BERMAN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Defendant BERMAN—by himself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Defendant BERMAN would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Defendant BERMAN exercised functional control over Corporate Defendants' businesses and its financial operations.

25. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

26. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

27. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

28. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all front-of-house and back-of-house employees, including but not limited to servers, cooks, food preparers, dishwashers, hosts, waiters, bartenders, bussers, and runners, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

29. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to Defendants' time-shaving. Moreover, Plaintiff brings claims as to tipped FLSA Collective Plaintiffs as Defendants improperly retained gratuities.

30. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

31. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all front-of-house and back-of-house employees, including but

not limited to servers, cooks, food preparers, dishwashers, hosts, waiters, bartenders, bussers, and runners, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

32. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") subject to Defendants' policies of tip retention, who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

34. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of (i) failing to pay wages for all hours worked, including overtime hours, due to Defendants' illegal time-shaving, (ii) failing to pay minimum wages, including overtime, due to an invalid tip credit, (iii) failing to reimburse for tools of the trade, (iv) failing to reimburse uniform expenses, including uniform maintenance expenses, (v) failing to pay

call-in pay premiums, (vi) failing to provide proper wage notices to Class Members, at the date of hiring and annually, per requirements of the RSWHL, and (vii) failing to provide proper wage statements per requirements of RSWHL.

35. More specifically, with regard to Plaintiff and Class Members, Defendants also failed to pay the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and Class Members suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek; (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

36. With regard to Plaintiff and the Tipped Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of unlawful tip retention, in violation of the FLSA and the RSWHL. Plaintiff and the Tipped Subclass suffered from Defendants' tip retention policies, because Defendants withheld significant amounts of gratuities from their wages while falsely informing customers that their tips were properly given to tipped staff.

37. Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

39. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

40. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding hiring and terminating Plaintiff and Class Members;

d) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e) Whether Defendants paid Plaintiff and Class Members overtime premiums at one-and-one half times their regular hourly rate for all hours worked in excess of forty (40) each workweek;

f) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, including overtime, due to a policy of time-shaving,

g) Whether Defendants accurately tracked the amounts of tips earned by Plaintiff and the Tipped Subclass each day and maintained records thereof;

h) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) of each workweek;

i) Whether Defendants illegally retained gratuities earned by Plaintiff and the Tipped Subclass;

j) Whether Defendants properly compensated Plaintiff and Class Members their call-in pay premiums;

k) Whether Defendants reimbursed Plaintiff and the Class costs and repairing costs of tools of the trade, pursuant to the requirements of FLSA, NYLL, and applicable state laws;

l) Whether Defendants failed to reimburse uniform expenses, including uniform maintenance expenses, as required by NYLL and applicable state laws;

m) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL and applicable state laws; and

n) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by NYLL and applicable state laws.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

41. In or around September 2023, Plaintiff was hired by Defendants to work as a Server at Defendant MEDUZA MEDITERRANIA. Plaintiff's employment with Defendants lasted until September 2025, when Plaintiff's employment was terminated.

42. Plaintiff's work schedule varied depending on what day she was scheduled and whether she was scheduled for the opening shift or closing shift. The opening shift started around 2:45/3:15 p.m. and ended around 11:00 p.m./12:00 a.m. on weekdays and 2:00/3:00 a.m. on weekends. The closing shift started around 4:30/5:00 p.m. and ended around 1:00 a.m. on weekdays and 3:00 a.m. on weekends. Plaintiff worked five (5) days per week and over forty (40) hours per week.

43. Plaintiff was always paid the New York tip credit minimum wage rate. From September 2023 to December 2023, Plaintiff was paid $10.00 per hour. From January 2024 to December 2024, she was paid $10.65 per hour. From January 2025 to September 2025, she was paid $11.00 per hour. At all times, FLSA Collective Plaintiffs and Class Members were paid similar hourly rates.

44. With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowance under the FLSA, NYLL, or TLC because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter;

(ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek; and (iii) failed to accurately keep track of daily tips earned and maintain records thereof.

45. Specifically, Plaintiff was required to engage more than twenty percent (20%) of their working time performing non-tipped related activities, such as cleaning the counters and coffee machine, restocking inventory, and polishing cutlery and crockery. For example, every server had to fold 100 napkins in a distinct way before they could leave. This one task took anywhere from thirty (30) minutes to one (1) hour. Additionally, the first forty-five (45) minutes of each shift was spent just doing non-tipped work. Even though Defendants required Plaintiff and tipped employees to engage in non-tipped activities in excess of two (2) hours or twenty percent (20%) of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

*Unpaid Wages, Due to Time-shaving*

46. Plaintiff, FLSA Collective Plaintiffs, and Class Members were not compensated for all hours worked, due to Defendants' unlawful time shaving policy.

47. Defendants tracked employees' hours through a system in which Plaintiff, FLSA Collective Plaintiffs, and Class Members were prohibited from clocking out without manager approval. Instead, Defendants required employees to look for their managers who would then assess their sidework before allowing employees to leave. Because managers were hard to find and busy, employees would be shorted an average of fifteen (15) minutes daily, trying to locate the manager on duty when they were ready to leave. Defendants' managers were not readily available to assess their sidework and give employees approval to leave because they may not even be on the floor, dealing with administration issues, vendors, or other customer concerns. As a result,

Plaintiff, FLSA Collective Plaintiffs, and Class Members worked approximately fifteen (15) minutes off the clock on a daily basis.

48. When the Restaurant was busy, Plaintiff's meal break was interrupted and she was forced to continue working, resulting in her meal breaks being less than twenty (20) minutes. Plaintiff's meal breaks were interrupted daily.

49. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly subjected to the same time-shaving policies and required by Defendants to engage in unpaid labor on a daily basis without any compensation.

*Unpaid Wages due to Tip Retention*

50. At all relevant times, Defendants failed to pay all tips owed to Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members, in violation of the FLSA and the RSWHL.

51. At all relevant times, Defendants hosted private events at the Restaurants. During these events, Defendants' clients left tips for the employees who provided them service. However, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members did not receive proper amounts of tips from the events they worked, because Defendants retained these tips for themselves. As a result, Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages were reduced further.

52. Defendants' private events generally cost thousands—or tens of thousands—of dollars. Despite this exorbitant pricing, which would surely yield large amounts of tips for Plaintiff due to the common technique of percentage-based tipping (commonly amount 20%), Plaintiff's tips on her paycheck did not reflect such tips. At all relevant times, FLSA Collective Plaintiffs and Tipped Subclass Members worked a similar number of events each week.

53. Additionally, Plaintiff was routinely required to work longer shifts based on the number of events which were scheduled each week. Nonetheless, the amount of tips she received for working more events and extended hours was grossly disproportionate to the hours she worked, indicating an improper tip policy arrangement.

54. At all relevant times, Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' tips and gratuities were covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." § NYLL 196-d.

55. Further, Defendants failed to provide customers with an explicit written statement that all tips, surcharges, service fees, and gratuities left would be retained by Defendants. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

56. Even if customers were provided with a written statement that any surcharges, service fees, etc. were not tips, it is clear that customers would still have understood these fees to be tips. It is an ordinary and typical practice for customers to leave tips to the employees working at a private event. Despite this ordinary and typical practice and despite working dozens of events, Plaintiff never received tips for his service. Clearly any written statement, if provided, that surcharges or service fees were not tips, failed to adequately inform the customers that these fees were being assessed for purposes of providing additional compensation to employees.

57. At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaining Plaintiff's, FLSA Collective Plaintiffs', and tipped Subclass Members' tips, in violation of the FLSA and the RSWHL.

*Unpaid Uniform, Uniform Maintenance, and Tools of the Trade Expenses*

58. At all relevant times, Defendants failed to reimburse Plaintiff's and Class Members' uniform expenses, in violation of the RSWHL.

59. Defendants provided Plaintiff with a single uniform, consisting of long linen pants, a sleeveless tank top, and an apron—which she was required to wear for every shift. Plaintiff was responsible for laundering the uniform at her own expense. Defendants further required Plaintiff and Class Members to purchase suede sneakers from Nordstrom at a cost of $92.00, without reimbursement. These unreimbursed uniform costs reduced Plaintiff's effective wages below the New York State minimum wage. Defendants imposed the same requirements on Class Members, who were likewise required to purchase and maintain their uniforms at their own expense.

60. In doing so, Defendants failed to furnish uniforms to Plaintiff and Class Members in sufficient number consistent with the average number of days worked per week as required by the applicable RSWHL, including 12 NYCRR § 146-1.7, forcing Plaintiff and Class Members to spend time off-the-clock caring and cleaning for the uniforms they had.

61. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members had to buy and provide their own tools and working materials, such as wooden trays, wine keys, torches, and forceps, and also had to repurchase such materials if they were broken or misplaced. FLSA Collective Plaintiffs, and Class Members were not reimbursed by Defendants for the cost of purchasing or maintaining their tools.

62. Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff's and Class Members' uniform expenses, in violation of the NYLL.

63. Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff, FLSA Collective Plaintiffs, and Class Members' tools of the trade expenses.

*Violations Under the WTPA*

64. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

65. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

66. New York Courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

> The Court finds Plaintiff sufficiently alleges injury under section 226. Plaintiff states that he was unable to ascertain how much he was owed and/or whether Bodum USA was actually calculating his commissions properly because Defendants failed to include any information about commissions on the wage statements. Under section 226, an "injury has occurred whenever the employee cannot easily determine ... rates of pay and all hours worked at each rate."

*Fox v. Bodum USA, Inc.*, No. CV 25-04249, 2025 LX 415800, at *27–28 (C.D. Cal. Oct. 7, 2025) (internal citations and quotations omitted).

67. Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with proper wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

68. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits

(including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

69. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiffs and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

70. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

71. Defendant knowingly and willfully operated their business with a policy of failing to provide Plaintiff with proper wage notices and accurate wage statements, in violation of the NYLL.

*Call-In Pay Claims*

72. Throughout her employment, after Plaintiff arrived at work, Defendant MEDUZA MEDITERRANIA would send Plaintiff home before the end of her shift. This was usually due to a cancelled private event. At all times, Plaintiff would not be compensated with her owed call-in pay premiums.

73. At all times, Class Members also would be sent home before the end of their shifts and would not be compensated with their call-in pay premiums.

74. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation, and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIMS**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

75. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

76. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

77. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

78. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

79. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs wages for all hours worked, due to time-shaving.

80. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' illegal tip retention policy.

81. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

82. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips, when Defendants knew or should have known such was due.

83. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid gratuities, and liquidated damages.

86. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

87. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

88. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the NYLL, §§ 2 and 651.

89. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, in violation of the NYLL.

90. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by illegally retaining their rightfully earned gratuities.

91. Defendants willfully violated Plaintiff's and Class Members' rights by failing to reimburse them for uniform expenses, including uniform maintenance expenses, in violation of the NYLL.

92. Defendants willfully violated Plaintiff's and Class Members' rights by failing to reimburse them for tools of the trade expenses, in violation of the NYLL.

93. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

94. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

95. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, illegally retained gratuities, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS

**(brought on behalf of a Rule 23 Class)**

96. Plaintiff repeats and re-alleges every previous allegation in this complaint as if fully set forth herein.

97. At all relevant times, Class Members were employed by Defendants within the meaning of the RSWHL, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

98. Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the RSWHL enumerated earlier are identical for purposes of their overtime class claims.

99. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, including the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a policy of underreporting employees' hours, in violation of the RSWHL outlined above.

100. Defendants knowingly and willfully failed to provide proper wage statements and notices to Subclass members, as required under the laws of New York, Texas, California, Arizona, Nevada, and Missouri.

101. Due to Defendants' RSWHL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid compensation for all hours worked, unpaid overtime premiums, unpaid call-in pay premiums, unreimbursed tools of the trade expenses, unreimbursed uniform maintenance costs, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

102. In addition to violations of RSWHL overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated RSWHL provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass Class Members' claims.

103. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions.); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due to time-shaving, due under the FLSA and the NYLL;

d. An award of disgorgement of all improperly distributed tips, due under the FLSA and the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage statement requirements;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

h. An award of unreimbursed costs for tools of the trade, pursuant to the FLSA and the NYLL;

i. An award of unreimbursed costs for uniform purchases and maintenance, pursuant to the NYLL;

j. An award of unpaid call-in pay premiums pursuant to the NYLL;

k. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class, including the Tipped Subclass; and

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 17, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.